# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**SHAIDON BLAKE,**

    **Plaintiff,**

vs.                                                              Case No.:  18-CV-03146-EFM-GEB

**JPAY, INC,** *et al.***,**

    **Defendants.**
_____/

## DEFEDANT JPAY, INC'S MOTION TO COMPEL ARBITRATION, AND/OR STAY PROCEEDINGS PENDING ARBITRATION AS AGAINST OR RELATED TO JPAY, INC.

Defendant, JPAY, INC. ("JPay"), files this, its motion to compel arbitration, and/or stay proceedings pending arbitration of claims as against or related to JPay, pursuant to the Federal Arbitration Act, Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4,[1] and in support states:

---

[1] "The [Federal Arbitration] Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 940, 74 L. Ed. 2d 765 (1983). As these remedies are complementary, and ultimately achieve the same goal, JPay seeks them in a single motion in this case.

1

## **INTRODUCTION**

Plaintiff, Shaidon Blake filed a Second Amended Complaint generally alleging that the Defendants violated his first amendment freedom of speech, press and religious rights rights under the United States Constitution. Parsing through the rambling and disjointed allegations, the gravamen of Plaintiff's action is his assertion that the Defendants, unilaterally or collectively, censored a cover photo of a book allegedly authored by Plaintiff.

Defendant, JPay, Inc. ("JPay") is a third-party contractor, which at all times material, provided electronic media and money transfer services to incarcerated individuals like Plaintiff, through written contracts with the Kansas Department of Corrections. The other Defendants, Paul Snyder and Joe Norwood are named as representatives of the Kansas Department of Corrections.

The relationship between Plaintiff and JPay is governed by a Terms of Service and Warranty Policy agreement that "requires the use of arbitration . . . [for] any dispute, action, claim, or other controversy between [Plaintiff] and JPay." JPay, therefore, moves under Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, to enforce the agreement and either stay the proceedings pending arbitration or enter an order compelling arbitration.[2] Moreover, irrespective of Plaintiff's prayer

---

[2] "While a motion to compel arbitration is not included in the ambit of Rule 12(b) motions that suffice as responsive pleadings in lieu of answers, courts traditionally have

for compensatory, punitive and/or injunctive relief, all such claims fall within the broad description of arbitrable claims as defined in Section 9, DISPUTE RESOLUTION& ARBITRATION AGREEMENT set forth in the Terms of Service and Warranty Policy, a true and correct copy of which is attached as Exhibit "A".

Of note, in order for incarcerated individuals like Plaintiff to avail themselves of the services offered by JPay, the Terms of Service, etc. (Ex. "A"), must be accepted prior to the individual's use of the JPay's kiosk or purchase of JPay's goods or services. From an operational standpoint, JPay's system software will not allow an incarcerated individual to access the kiosk until the Agreement is accepted. Plaintiff, Shaidon Blake #96323 periodically and routinely accepted JPay's Terms of Service, the most recent receipt of acceptance occurring on July 16, 2020 at 3:17 pm. (Exhibit "B").

---

entertained certain types of pre-answer motions—such as motion to compel arbitration and stay proceedings—not specifically provided for in the Federal Rules of Civil Procedure." *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534, 1537 n.1 (S.D. Fla. 1996) (citation omitted); 5C Charles Alan Writing & Arthur Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2010) ("A motion to stay . . . is not within the ambit of the defenses enumerated in Rule 12(b) . . . [but], relying on their inherent power, federal courts often consider these motions in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts.").

## STATEMENT OF CASE

*Pro se* Plaintiff Shaidon Blake is an incarcerated individual within the Kansas Department of Corrections ("KDOC"), presently housed at El Dorado Correctional facility, El Dorado, Kansas.

JPay is a Delaware corporation headquartered in Broward County, Florida. As stated, JPay provides services for correctional institutions and incarcerated individuals, including, among other services, money transfer, multi-media tablets, video visitations, and music downloads.

Other than responding to this Honorable Court's Order to Show Cause (Doc. 73), the instant Motion to Compel Arbitration is JPay's first opportunity to respond to Plaintiff's several iterations of his Complaint. JPay's right to respond was provided for in this court's Memorandum and Order issued on February 25, 2022 (Doc. 75)

There is a clear and broad Arbitration Agreement between the parties which requires any dispute to be resolved in arbitration:

Section 9 of JPay's Terms of Service and Warranty Policy provides for **DISPUTE RESOLUTION & ARBITRATION AGREEMENT ("Arbitration Agreement") as follows:**

(a) <u>Definition of Dispute</u>. The term "Dispute" means any dispute, action, claim, or controversy between you and JPay, whether in contract, tort, statute, regulation, ordinance, or any other legal or equitable basis.

4

> Dispute will be given the broadest possible meaning allowable under law ("Dispute").
>
> (b) The Arbitration Provision further mandates a two-step dispute resolution process. *First*, it requires the aggrieved party to attempt to resolve the dispute in good faith by providing a written notice and allowing JPay 30-days to respond. 9(b). Failing the informal dispute resolution, the next step is to resort to small claims court or arbitration, depending upon the relief sought by the aggrieved party. *Id.* 9(c). In the event the aggrieved party seeks an amount less than $50,000, (undeterminable here), either party may initiate arbitration with Resolute Systems, LLC as follows:
>
> How Arbitration Works for Disputes less than $50,000. If the amount in dispute is lower than $50,000, then subject to the small claims provisions above, either party may initiate arbitration, which shall be conducted by Resolute Systems, LLC ("Resolute") before one (1) arbitrator and pursuant to the Resolute Commercial Arbitration Rules ("Resolute Rules"), as modified by this Arbitration Agreement. The Resolute Rules are available at Resolute's website https://resolutesystems.com. Resolute may be reached telephonically at (800) 776-6060. For your convenience, we have included a copy of the Resolute Rules in the Frequently Asked Questions (FAQs) section of the Kiosk. The rules include instructions on how to file an arbitration. In the event Resolute is unavailable or unwilling to hear the Dispute, the parties shall agree to another comparable arbitration provider, and if they are unable to agree, the parties shall apply to a court for appointment of a new arbitrator, pursuant to Section 5 of the Federal Arbitration Act. Unless you and JPay agree otherwise, including on whether to conduct arbitration by telephone or videoconference, any arbitration hearing shall take place in the county of your residence (determined by the location of your correctional facility). JPay will reimburse you for arbitration filing fees that exceed the cost of filing a claim in court if, after the informal dispute resolution process laid out in subsection (b) fails, you file an arbitration that JPay or the Arbitrator determines is not frivolous. All other costs of arbitration are to be assessed as required by the Resolute Rules and applicable fee schedule.

5

*Id.* ¶ 9(f). The Arbitration Provision is unambiguous, mandatory, and beyond reasonable dispute.

Of further relevance here and as discussed below, Section 9 (j) of the Arbitration Agreement provides for the application of the law of Florida to determine whether any dispute or claim falls within the ambit of the Arbitration provision.

## ARGUMENT

JPay raises five primary points in support of compelling arbitration or staying this litigation pending arbitration. First, the Agreement is governed by the FAA. Second, this Court must enforce the arbitration provision of the Agreement. Third, any challenge to the legality of the Agreement must be presented to the arbitrator. Fourth, any challenge to the Arbitration Provision must be decided by the arbitrator. Fifth, this Court should stay proceedings and/or issue an order compelling arbitration as to JPay.

### I.   The Parties' Arbitration Agreement is Governed by the FAA or the FAC

The FAA applies to any arbitration agreement that is "written" and is a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Therefore, the FAA governs any transaction that "in fact involve[s] interstate commerce." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274, 281-82 (1995); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Sims v.*

6

*Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004); *see also Protective Ins. Co. v. State Farm Gen. Ins. Co.*, No. 1:16cv38-MW/GRJ, 2017 WL 6016301, at *2 (N.D. Fla. Aug. 9, 2017) ("Because this action involves interstate commerce, Plaintiff's motion is governed by the Federal Arbitration Act ('FAA').").

The FAA governs this dispute because both criteria are met. The Arbitration Provision is written and involves a *Delaware* company with its principal place of business in *Florida*, doing business with persons incarcerated in Kansas. To the extent that state law applies to an interpretation of the Arbitration Agreement, Section 9 (j), of the Agreement mandates that Florida law governs. Nothing more is required to trigger the FAA's application.

In the unlikely event that this Court finds the Arbitration Provision does not involve interstate commerce, the Florida Arbitration Code governs. *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Medical Ctr., Inc.*, 154 So. 3d 1115, 1124 (Fla. 2014) ("An arbitration clause in a contract not involving interstate commerce is subject to the FAC."). Given the similarities between the FAA and the FAC, however, the Court's analysis would be the same. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1097 (11th Cir. 2003) ("The Florida Arbitration Code is substantially similar to the FAA and the Uniform Arbitration Act."); *Jupiter*

7

*Medical Ctr., Inc.*, 154 So. 3d at 1125 ("[T]he FAC is not in conflict with the FAA.").

## II. This Court Must Enforce the Arbitration Provision

This Court must enforce the arbitration agreement between the parties because (1) public policy favors arbitration, (2) both federal and Florida law leave no room for discretion, and (3) the Arbitration Provision is enforceable.

### 1. Both Federal and Florida Law Have Strong Policies Favoring Arbitration

When a court considers the enforceability of an arbitration agreement, the starting point of the analysis is the strong public policy favoring arbitration under both federal and Florida law.

As to the FAA, Congress established a "liberal federal policy favoring arbitration agreements." *Hill v. Ricoh Americas, Corp.*, 603 F.3d 766, 770-71 (10TH Cir. 2010), citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (finding that the FAA "embodies the national policy favoring arbitration."). The Supreme Court has noted that its "cases place it beyond dispute that the FAA was designed to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). Indeed, the Court

8

recognized that "[t]he principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 344 (citation and quotations omitted); *see also Armijo v. Prudential Ins. Co. of Amer.,* 72 F.3d 793, 797-98 (10th Cir. 1995) ("'[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration' and thus, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"); *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003) ("[T]he Supreme Court [has] made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced where possible.") (citations omitted). Therefore, "any doubts concerning the scope of arbitrable issues should be resolved in favor" of arbitrating Plaintiff's claims. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Armijo v. Prudential Ins. Co. of Amer.,* 72 F.3d 793, 797-98 (10th Cir. 1995).

Similarly, Florida law favors the resolution of disputes by way of arbitration. *See, e.g., CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*, 201 So. 3d 85, 90 (Fla. 3d DCA 2015) ("[W]e are mindful that arbitration provisions are favored by all courts and that all doubts should be resolved in favor of arbitration."); *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 464 (Fla. 2011) ("Today, arbitration provisions are common, and their use generally favored by the

courts.") (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). Indeed, "[a]s the federal courts do with comparable provisions under the [FAA], we too should resolve all doubts about the scope of an arbitration agreement as well as any questions about waivers thereof in favor of arbitration, rather than against it." *EMSA Ltd. P'ship v. Mason*, 677 So. 2d 105, 107 (Fla. 4th DCA 1996) (*quoting Ronbeck Constr. Co. v. Savanna Club Corp.*, 592 So. 2d 344, 346 (Fla. 4th DCA 1991)).

    2.    <u>Federal and Florida Law Leave No Room for Discretion</u>

Under both the FAA and FAC, relief is mandatory, with no room for discretion, and courts are prohibited from looking into the merits of the case. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"); FAC § 682.03(b) ("[T]he court shall proceed summarily to . . . order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate."); *Meyer v. Dans un Jardin, S.A.*, 816 F.3d 533, 538 (10th Cir. 1987) (holding the language of the FAA mandatory citing *Byrd*).

3.     The Arbitration Clause is Enforceable

Under both the FAA and the FAC, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute. The elements necessary to invoke the stay provision of the FAA and compel a controversy to arbitration are as follows:

(1) An agreement in writing for arbitration;

(2) A contract evidencing a transaction involving commerce among the several states;

(3) An issue referable to arbitration and the court's satisfaction that the issue involved is referable to arbitration under the agreement;

(4) An application by one of the parties to stay the proceedings; and

(5) The applicant for a stay of proceedings is not in default with such arbitration.

*See* 9 U.S.C. §§ 1–3.

They are similar under Florida law: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Shotts*, 86 So. 3d at 464 (quoting *Seifert*, 750 So. 2d at 636). Based on these elements, this Court must order Plaintiff to arbitrate his claim against JPay.

First, the parties entered into a valid written agreement to arbitrate and Plaintiff accepted the agreement. Exhibits "A" and "B".

11

Second, an arbitrable issue—one where there is "some nexus between the dispute and the contract containing the arbitration clause"—also exists. And while JPay steadfastly disclaims any liability in this matter since it merely follows the directives of the Kansas Dep't of Corrections as it relates to the performance of its contractual agreement (s) i.e., it makes no discretionary decisions, such issue falls squarely within the ambit of the broad Arbitration provision in play here.

Third, JPay has not waived its right to arbitration. Waiver occurs only if a party "takes an active part in litigation or [] undertak[es] actions inconsistent with the right [to arbitration]." *Coral Assoc. v. Chino Elec. Inc.*, 501 So. 2d 69, 70 (Fla. 3d DCA 1987); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011) ("[A] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate.") (citations omitted); *see also Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust Litig.)*, 835 F.3d 1195, 1199 (10th Cir. 2016) (setting forth six factors for finding waiver of right to arbitration, including whether party has substantially invoked litigation machinery). Here, JPay has not "substantially invoke[d]" the litigation machinery; instead, JPay's first substantive act in this litigation (*i.e.*, other than informal agreements with counsel and responding to this Court's Order to Show Cause) has been to compel arbitration. Therefore, there is no basis to find that JPay waived its right to compel arbitration.

### III. Any Challenge to the Validity and Enforceability of the Agreement Must be Presented to the Arbitrator

To the extent Plaintiff challenges the validity and enforceability of the Agreement, those issues must be determined by the arbitrator rather than the court. The Supreme Court has held:

> [U]nless the challenge is to **the arbitration clause itself**, the issue of the contract's validity is considered by the arbitrator in the first instance. … We affirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, **must go to the arbitrator**.

*Buckeye Check Cashing*, 546 U.S. at 445–46, 449 (emphasis added).

Plaintiff has not challenged the Agreement or the Arbitration Provision. Instead, he alleges a constitutional claim that falls squarely within the Arbitration Provision. Accordingly, the Court must issue an order compelling arbitration (where Plaintiff is free to raise any claims regarding the validity, enforcement, and/or breach of the parties' agreement).

### IV. This Court Should Stay Further Proceedings in this Case Until Completion of Arbitration

Pursuant to 9 U.S.C. § 3 and Florida Statutes § 682.03, JPay respectfully requests that the Court stay these proceedings as to JPay, pending the parties' completion of the arbitral process. *See* 9 U.S.C. § 3 ("If any suit . . . be brought . . . upon any issue referable to arbitration . . . the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action until such

arbitration has been had in accordance with the terms of the agreement."); Fla. Stat. § 682.03 ("[I]f a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section."). To avoid duplicative litigation and conserve resources, JPay also requests that this Court stay further proceedings in this matter until this motion is decided.

## CONCLUSION

For the foregoing reasons, JPay respectfully requests that the Court: (a) compel arbitration of Plaintiff, Shaidon Blake's claims against JPay; (b) stay this litigation as to JPay pending resolution of the arbitral proceedings; and (c) issue any other relief that the Court deems proper.

Dated: March 4, 2022  Respectfully Submitted,

By */s/ Whitney L. Casement*
Whitney L. Casement, #25466
Stevens & Brand, LLP
4848 S.W. 21st Street, Suite 201
Topeka, Kansas 66604
Telephone: (785)-408-8000
Facsimile: (785) 408-8003
Email: WCasement@StevensBrand.com
Local Counsel for Defendant JPay LLC


By: */s/ Jonathan A. Heller*
Jonathan A. Heller Florida Bar # 340881
Co-Counsel for JPay LLC

>Law Offices of Jonathan A. Heller, P.A.
>2332 Galiano Street, Suite 215
>Coral Gables, FL 33134
>Tel. 305-372-5000
>Email: jonathan@jhellerlaw.com
>*Pro Hac Vice* Counsel for JPay, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion to Compel Arbitration and Stay All Proceedings* was e-filed electrically through CM/ECF and furnished by U.S. mail to: **Shaidon Blake, # 96323**, El Dorado Correctional Facility Central, P.O. Box 311, El Dorado, KS 67042 this 4th day of March 2022.

>*/s/ Whitney L. Casement*
>Whitney L. Casement