IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAIDON BLAKE,

    *Plaintiff,*

vs.

    Case No. 18-CV-3146-EFM

JPAY, LLC, *et al.*,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Shaidon Blake, an inmate at El Dorado Correctional Facility within the Kansas Department of Corrections ("KDOC"), used Defendant JPay LLC's services to attempt to procure an image of the cover to his book, "Doggystyle Confessions of a Serial Cheater." That attempt went awry when the KDOC censored the image, which ultimately led Plaintiff to file the instant suit against JPay and several KDOC officials.[1] JPay now asks the Court to compel the parties to engage in arbitration and to stay proceedings in this Court. This request is based on the "Dispute Resolution & Arbitration Agreement," which, according to JPay, Plaintiff was required to accept

---

[1] The Court previously granted summary judgment in favor of the KDOC Defendants, leaving JPay as the only remaining Defendant in this case.

before he could use its services. For the reasons laid out below, the Court grants JPay's Motion to Compel Arbitration (Doc. 77).

## I. Factual and Procedural Background

JPay, pursuant to its contractual relationship with the KDOC, provides services to inmates in various KDOC facilities. These services include money transfer, multi-media tablets, email, video visitation, and music downloads. Inmates generally access JPay's services through kiosks located within the correctional facilities, or through mobile tablets provided by JPay.

When an inmate attempts to use a JPay kiosk or tablet to access its services, he or she must first log in. Gregory Campbell, a Compliance Manager at JPay, states that the inmate will then immediately be presented with the JPay Terms of Service. The Terms of Service will appear on the kiosk screen, and the software will not allow the inmate to use JPay's services through that kiosk until the inmate clicks a button to acknowledge and accept the Terms.

The opening paragraph of the Terms of Service state, in bold, all-capital letters, that "[b]efore you use the JPay tablet and the services provided thereunder, you must read and agree to these Terms of Service and Warranty Policy which include a Dispute Resolution and Arbitration Agreement in Section 9." The opening paragraph directs inmates to seek clarification from correctional staff if they cannot read or understand the agreement and informs them that they consent to the agreement by clicking the "I AGREE" button.

As noted at the beginning of the Terms of Service, Section 9 is entitled "Dispute Resolution & Arbitration Agreement" ("Agreement"). The first line of this section states, again in bold and capital letters, "[t]his agreement requires the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions." Section 9 defines a "dispute" to include "any dispute, action, claim, or other controversy between you and JPay, whether in contract, warranty,

tort, statute, regulation, ordinance, or any other legal or equitable basis." When a dispute arises, the Agreement directs that the parties first engage in a good faith attempt to resolve it outside of formal proceedings. If such attempt fails, the Agreement specifies that the legal dispute must be resolved either through "an individual small claims court action or through binding individual arbitration." The Agreement then goes into much greater detail regarding each of those alternatives.

Plaintiff Shaidon Blake has used or attempted to use JPay's services on numerous occasions while incarcerated in El Dorado Correctional Facility. A review of his purchase history reveals that he made his first purchase on April 1, 2018, and has made around two dozen purchases from a JPay kiosk or tablet since that date, including his attempted receipt of the book cover in question on May 22, 2018. According to Mr. Campbell, before Plaintiff could utilize a kiosk to purchase these services, he would have first been required to accept the Terms of Service—including the Arbitration Agreement—in order to proceed. Plaintiff disputes that he ever agreed to the Terms of Service. He calls JPay's claim that he signed the Terms of Service "unsubstantiated" and states that "to his best knowledge, [he] does not recall any such written agreement."

Plaintiff commenced the instant action on June 19, 2018. He contends his First Amendment rights were violated when KDOC censored the book cover he sought to receive using JPay's services on May 22, 2018.

JPay did not make an appearance in this matter until quite recently. A more complete history of JPay's absence is covered in the Court's recent Orders (Docs. 69 & 75) and need not

detain the Court here. Suffice it to say that JPay's first response[2] to the Second Amended Complaint (or any previous version of the Complaint, for that matter) is its instant Motion to Compel Arbitration.

## II.     Legal Standard

This Motion is governed by the Federal Arbitration Act ("FAA"). "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[3] The Tenth Circuit recognizes that the FAA "manifests a liberal federal policy favoring arbitration."[4] If a court finds that the allegations of the Complaint fall within the scope of an enforceable agreement to arbitrate, it must stay those claims subject to arbitration and order the plaintiff to pursue them in arbitration.[5] Under those circumstances, the Supreme Court has held that there is "no place for the exercise of discretion," and a stay is required until the plaintiff has arbitrated each claim encompassed by the arbitration clause.[6]

---

[2] Plaintiff objects to the characterization of JPay's Motion as a response to his Second Amended Complaint. "While a motion to compel arbitration is not included in the ambit of Rule 12(b) motions that suffice as responsive pleadings in lieu of answers, courts traditionally have entertained certain types of pre-answer motions—such as a motion to compel arbitration and stay proceedings—not specifically provided for in the Federal Rules of Civil Procedure." *Creative Tile Mktg., Inc. v. SICIS Int'l, S.r.L.*, 922 F. Supp. 1534, 1537 n.1 (S.D. Fla. 1996) (citation omitted). Thus, the Court considers the instant Motion as responsive to its Order requiring JPay to respond to the Second Amended Complaint.

[3] *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

[4] *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006) (quotation omitted).

[5] 9 U.S.C. § 3.

[6] *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

A federal district court may compel arbitration when it would have jurisdiction in the underlying dispute.[7] Upon motion by one of the parties, the Court must stay litigation on a matter that the parties have agreed to arbitrate.[8]

Because Plaintiff proceeds pro se, the Court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.[9] But the court does not assume the role of advocate for a pro se litigant.[10] Nor is a pro se litigant excused from "follow[ing] the same rules of procedure that govern other litigants."[11]

### III.   Analysis

Plaintiff raises two contentions in response to JPay's Motion to Compel Arbitration. First, he disputes that he ever entered into an agreement with JPay to arbitrate disputes that arose between them. Second, even if the Court finds that the parties did make an agreement to arbitrate, Plaintiff contends JPay waived its right to enforce the agreement. The Court examines each in turn.

**A.   Agreement to Arbitrate**

The FAA "was not enacted to force parties to arbitrate in the absence of an agreement."[12] Rather, "Congress' concern 'was to enforce private agreements into which parties had entered.' "[13] Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."[14]

---

[7] 9 U.S.C. § 4.

[8] *Id.* § 3.

[9] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[10] *Id.*

[11] *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quotation omitted).

[12] *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997).

[13] *Id.* (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

[14] *Id.* at 1287 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Where the parties dispute the existence of an arbitration agreement, "a court may grant a motion to compel arbitration if 'there are no genuine issues of material fact regarding the parties' agreement.'"[15] The court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."[16] On a motion to compel arbitration, the moving party "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement."[17]

In determining whether JPay has met its initial burden, the Court examines whether the evidence presented demonstrates that the "clickwrap" agreement utilized by JPay in its Terms of Service and Arbitration Agreement constitutes an enforceable agreement to arbitrate.[18] For context, a clickwrap agreement is one that "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction."[19] This is precisely the type of agreement utilized by JPay in this case.

---

[15] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quoting *Avedon Eng'g*, 126 F.3d at 1283).

[16] *Id.* (quotation omitted).

[17] *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 610 (10th Cir. 2014) (citing *Hancock*, 701 F.3d at 1261).

[18] JPay urges the Court to leave this question for the arbitrator, and cites *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440 (2006), in support. In that case, the Supreme Court held that the plaintiff's claim that a contract—which contained an arbitration provision—was void for illegality must be determined by an arbitrator in the first instance, not the court. *Id.* at 449. Dissimilarly, Plaintiff's underlying claims here do not challenge the validity or enforceability of the Terms of Service or the Agreement, so the Court, in considering the whether the Agreement constitutes an enforceable agreement to arbitrate, does not make a determination as to one of the claims in the lawsuit. But in responding to the instant Motion, Plaintiff *does* dispute that the parties agreed to arbitrate disputes. The Court finds that *Buckeye Check Cashing* does not prohibit it from considering whether the parties entered into an enforceable agreement to arbitrate, and further believe that it is necessary to do so to fully consider JPay's Motion.

[19] *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190 (D.N.M. 2018) (quoting *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D. Pa. 2007)).

"Clickwrap agreements are increasingly common and 'have routinely been upheld.' "[20] "To determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement."[21]

JPay has provided sufficient evidence that Plaintiff had reasonable notice of the Arbitration Agreement. Mr. Campbell states that an inmate attempting to use JPay's services, either at a kiosk or through one of its tablets, will first be faced with JPay's Terms of Service before the inmate can proceed with his or her purchase. The first paragraph of the Terms of Service refer, in bold, capital letters, to the Arbitration Agreement in Section 9 of the Terms. The opening line of that section makes clear, again in bold, capital letters, that "[t]his agreement requires the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions." A reasonable reader would thus, at the very least, be put on notice of the existence of the Agreement and would have an opportunity to read it in full. This is sufficient evidence to meet JPay's initial burden to show that Plaintiff had reasonable notice of the Agreement.

JPay has also provided evidence that Plaintiff manifested assent to the Agreement. JPay's software, according to Mr. Campbell's affidavit, will *only* allow an inmate to proceed to a purchase if the inmate first acknowledges and accepts the Terms of Service, including the Agreement, by clicking a button marked "I AGREE." JPay's records show that Plaintiff used its kiosks to purchase services on several dozen occasions, including in connection with his attempt to receive the image of the book cover at issue in this case on May 22, 2018. As such, the evidence suggests

---

[20] *Hancock*, 701 F.3d at 1261 (quotation omitted).

[21] *Davis*, 303 F. Supp. 3d at 1190 (quotation omitted). *See also Hancock*, 701 F.3d at 1256 ("Courts evaluate whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to read the agreement, and the consumer manifested an unambiguous acceptance of the terms.").

that Plaintiff must have clicked the "I AGREE" button when prompted with JPay's Terms of Service, and thus manifested assent to the Terms of Service and the Agreement. Because JPay has introduced sufficient evidence that it had an enforceable agreement to arbitrate with Plaintiff, it has met its initial burden at this stage.

The burden thus shifts to Plaintiff to demonstrate a genuine issue of material fact regarding the existence of an arbitration agreement between himself and JPay. Plaintiff is unable to do so. His only attempt to counteract JPay's evidence regarding the Agreement is a statement, in his response brief, that "to his best knowledge [he] does not recall any such written agreement." Arguments made in a memorandum in support of or in opposition to a motion are not evidence,[22] and Plaintiff fails to support this argument by citation to any material in the record.[23] Though Plaintiff appears pro se, he is still required to abide by the same rules of procedure as other litigant.[24] This includes the requirement that a party attempting to demonstrate the existence of a genuine issue of material fact must cite to relevant portions of the record.[25]

Further, even if the Court were to consider Plaintiff's statement that he "does not recall" the Arbitration Agreement, "a party's inability to remember signing contracts" is insufficient "to raise a material issue as to the validity of the agreements."[26] Plaintiff's "[v]ague, conclusory

---

[22] *See Fritzsche v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).

[23] In fact, the only affidavit Plaintiff submitted in response to JPay's Motion concerns an entirely unrelated (and irrelevant) matter regarding Plaintiff's instructions to his former counsel.

[24] *See Azim v. Tortoise Cap. Advisors, LLC*, 2016 WL 3405126, at *5 (D. Kan. June 21, 2016) ("[T]he Court cannot serve as a *pro se* litigant's advocate, and it cannot accept as true conclusory allegations unsupported by evidence in the record.") (citing

[25] *See* Fed. R. Civ. P. 56(c). *See also SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (stating that courts, on a motion to compel arbitration, "apply a standard similar to that applicable to a motion for summary judgment" and that to demonstrate a genuine issue, "the facts 'must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.' ") (quotation omitted).

[26] *Singh v. DISH Network LLC*, 2019 WL 3037882, at *2 (D. Utah July 11, 2019) (collecting cases) (citations omitted).

statements" that he does not recall the Agreement "do not suffice to create a genuine issue of material fact."[27] Thus, it is uncontroverted that an enforceable agreement to arbitrate existed between Plaintiff and JPay.

The Court also concludes that this Agreement covered the dispute at issue in this case. The Agreement defined a "dispute" as "any dispute, action, claim, or other controversy between you and JPay, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis." It further provides that "[d]ispute will be given the broadest possible meaning allowable under the law." This is a very broad arbitration clause with no apparent limiting language.[28] And the dispute in the case falls within the broad language of the clause, as it involves a legal and equitable action under 42 U.S.C. § 1983 by Plaintiff against JPay for an alleged violation of his constitutional rights. Thus, the Court concludes that the Agreement covers Plaintiff's claims in the instant action against JPay.

**B.    Waiver**

Plaintiff also argues that JPay waived its right to demand arbitration. He contends that JPay's decision to "seek arbitration should have been initiated during or after settlement talks with Plaintiff's former lawyer." The Tenth Circuit has recognized two forms of waiver. First, a party can subjectively intend to abandon or relinquish its right to arbitrate.[29] Second, a "party's conduct in the course of litigation can foreclose it from the right to switch to arbitration, regardless of its

---

[27] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998).

[28] *See Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1146 (10th Cir. 2014) ("[W]e agree with the district court that the arbitration clause at issue here is broad . . . . This clause contains no limiting language, either restricting arbitration to any specific disputes or to the agreement itself.")

[29] *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016) (citation omitted).

intent."³⁰  Plaintiff asserts the latter has occurred in this case, because JPay, by not requesting arbitration during its preliminary "settlement talks" with Plaintiff and his former counsel, undertook action "inconsistent with the right to arbitration."

Six factors are useful in assessing whether a party's conduct in litigation evinces a waiver of its right to demand arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.³¹

The Court finds nothing in JPay's actions inconsistent with its right to demand arbitration under the Agreement.  JPay, though technically named as a Defendant in this lawsuit for several years, has only recently engaged with the proceedings.  Pursuant to the Court's previous Order to Show Cause, JPay explained its absence as borne out of confusion from discussions with Plaintiff's former counsel.³²  JPay has not "substantially invoked" the litigation machinery in this case, has not waited until the eve of trial to request arbitration or otherwise purposefully delayed its request, and has not filed any counterclaims.  Nor does it appear that JPay has engaged in any discovery.  Thus, the Court concludes that JPay has not waived its right to demand arbitration under its Agreement with Plaintiff.

---

³⁰ *Id.*

³¹ *Id.* (quoting *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988)).

³² Plaintiff refers to these as "settlement discussions."  It seems more likely that these were the discussions JPay referenced in response to the Court's Order to Show Cause, wherein it informed Plaintiff's former counsel that it believed it was an improper defendant and requested to be dropped from the Second Amended Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings Against JPay (Doc. 77) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 26th day of April, 2022.

                                          ERIC F. MELGREN
                                          CHIEF UNITED STATES DISTRICT JUDGE